Good morning. Court is in session. All right. We call the case of B. A. Kelly Land Company, L.L.C. v. Aethon Energy Operating, L.L.C. Mr. Colvin. Good morning, Your Honors. Jim Colvin appearing on behalf of B. A. Kelly Land Company, L.L.C. Okay. May it please the court, Your Honor. Again, my name is Jim Colvin. I am representing B. A. Kelly, the appellant in this matter. This case involves a situation in which an oil company, an oil operation company, Aethon Energy Operating, acquired operational rights from an affiliated entity, Aethon United B.R. Mr. Colvin, we've read the briefs and are familiar with the basic facts and proceedings, so why don't you move to your legal points? Of course, you can refer back to the facts as you need to. Certainly, Your Honor. The first assignment of error or issue presented for this appellate court is the issue of the propriety of the district court's grant of the motion for partial summary judgment in favor of Aethon Energy Operating Company. Specifically, the district court ruled that the two demand letters, the latter three demand sent to Aethon Energy Operating were insufficient in accordance with Louisiana revised statutes 30 colon 103.1 and 103.2. Obviously, the import of those statutes is to notify an operator that there's an unleased owner and that unleased owner is demanding the affidavits of costs and revenue production sheets so that the operator, excuse me, that the unleased owner can understand where his money is going in terms of the production. And that is particularly true in this case, given the fact that B.A. Kelly was a one quarter interest owner, unleased interest owner in these two sectional units and therefore obviously was known to to Aethon United B.R. and Aethon Energy Operating Company from the beginning since they acquired those leases back in 2013 from JW Operating. Now, the statutes in question specifically and plainly provide that the that the unleased owner must provide notice to the operator that there is some form of failure to provide or or respond to the provisions of the article. And we think this is where the district court erred in granting summary judgment. Essentially, the district court took a position in its order that the failure of these letters was directly attributed to the fact that there wasn't a specific citation to either 103.1 or 103.2. The statute the statutes themselves don't require the statute or citation to a particular statute by numeric designation. Moreover, there are no cases either in federal courts or in the district courts of the state Louisiana or appellate courts in the state of Louisiana state court proceeding that indicates that there is a specific requirement that there be a citation to the specific statute. Also, if you look at this from the standpoint of a of statutory interpretation perspective, the statute is clear that it only requires the citation or the notification to provide reasonable notification to the operator that there is, in fact, a failure to provide for the requirements or by the operators of 103.1. Can I ask you one question, please, sir? Give me some sense of what we're talking about in dollar values here. We're evaluating looking back at changes of correspondence and protecting interest, et cetera. You would help me to have some sense of what we're talking about. We're talking about forfeitures. What dollar amounts are in play? The dollar amounts are in between three quarters of a million, a million dollars, somewhere in that area in terms of the forfeiture costs. Maybe so and that is what one of the three claims that we made in this case. The other two claims that we made in this case involved accounting. It involved the payment of the interest for the revenue production on the wells. So it's there were three prongs to the to the pleading that was filed. And so the forfeiture costs only come into play to the extent that the operator cannot offset the amount of costs or the pro rata share of the costs involved in the wells production revenues. And and I think that is one of the issues that that is most significant to the to the way in which this case came, the way in which this case arose, is that when we filed this lawsuit on behalf of V. A. Kelly after the two demand letters had been sent, the latter of the three demand letters had been sent. We filed this suit alleging all three of those claims, but incorporated into the the the demand letters for forfeiture. Uh, is this what we what we have styled the J. W. Assumption claim, which is this November of two thousand third. Kelly to then operator and leaseholder operating J. W. Operator received the letter, never responded to the demand for well cost accounting and time passed. Ultimately, in two thousand sixteen, a thon United B. R. Uh, acquires the leases. Um, now the district court never addresses or never takes up this issue of the effect of the J. W. Operating, which leads me into this issue that we have with the motion for leave to amend the courts of the district courts dismissal of that or denial of that claim. Um, the reason that we was not for purposes of forum shopping. The reason that we filed this issue at that time was twofold. One when we filed this suit originally, we did not understand the scope of the J. W. Assumption claim because there was a letter in September of two thousand sixteen issued by a thon energy operating to all the leasehold, all the mineral owners, including B. A. Kelly, which stated unequivocally that A. E. O. Had required had acquired those leases. We later learned during the course of discovery in this case that A. E. O. Was not, in fact, owner of those leases and A. O. Had no liability and could have no liability for the J. W. Assumption claim. So we sought to amend our complaint to bring in the proper party in that case, which is a thon United B. R. Which through no fault of our own is a company is a entity that would destroy diversity jurisdiction and affect the subject matter jurisdiction of the district court. So we did that. And we also did that from a timing standpoint, because the court had indicated that there was no that it intended to dismiss with prejudice the entirety of B. A. Kelly's suit. That is the assumption claim. That is the forfeiture claim. That is the accounting claim. And that is the revenue claim. So we had no alternative at that time but to amend the complaint to bring in that entity. And that is an entity that the L. P. What we refer to be to defeat jurisdiction diversity jurisdiction. I'm sorry, Your Honor. I didn't catch the effect of that would be to defeat diversity jurisdiction. It would, Your Honor. But and it's somewhere you were to do within escape with adverse ruling. You're anticipating it was. It was to escape. It was to prevent subject matter jurisdiction. Uh, or the residue to caught effect of that ruling. We filed a motion for partial summary judgment on the forfeiture claim. Only a partial summary judgment. The district court refer responds with a suespante, uh, indication that he's gonna dismiss the entirety of the suit, which would have residue Dakota preclusive effects as to all of the claims, not just that one claim. So we had no alternative at that time, but to bring that party and we weren't in bad faith. We weren't forum shopping. We were simply faced with a situation in which the judge was going to dismiss our entire case. Those are his words, not ours. And we had no alternative but to bring that party in to protect against the residue to caught effect of the preclusive effects of such a judgment that such a judgment would have for the rest of our case. Um, and what's more, the judge did this in such a way respectfully did it in such a way only gave us 21 days to follow brief, despite the fact that we had depositions ongoing and scheduled at that time, despite the fact that the discovery that the dispositive motion deadline hadn't passed and we had no time to present the evidence on, for example, the issue of the J. W. Assignment and the assumption claim. We never got opportunity to present that in this set. And when we filed this, this this motion for there, there was no scheduling order. In effect, there was no violation or post late or some dilatory filing of that. We found out about this about the true nature of the ownership sometime during the summer, and we filed during the summer of that same year, and it was within within four months post learning of the true nature of that, uh, of the L. P. S. Ownership of the leases and not a E. O. S. Ownership of the leases that we filed our emotion for leave and again in the aftermath of an indication by the court that there would be a full and final dismissal of the entirety of B. A. Kelly's lawsuit, which was which was something that we deal with at the time. Ultimately, the court did not. The district court did not do that. The district court did not do that. They saved those those two remaining claims and save the claim on the J. W. Assumption claim. But we did not know that at the time we filed that. So we at the time we were not in bad faith or or engaged in form shopping. When we did that, we were simply protecting our rights as to the remaining claims of the case. So that's what the courts look at, according to the jurisprudence cited to the court of Rule 19 analysis. When you're talking about a dispense, indispensable party looks to, uh, the faith or looks to the indispensable nature of that party. And we think that we and have argued before the court and presented evidence on this point that we can't get full relief on this J. W. Assumption claim unless and until the L. P. Is involved because a E. O. Had no contractual relationship. Uh, Your Honor, I see that my time is up and I'll reserve the remainder for rebuttal. Yeah, I mean, actually, you have almost four minutes left. You certainly don't have. Oh, this is for the 15. Okay, I apologize, Your Honor. Then I will. Then I will make you. You don't shouldn't feel obliged to pull up all the time, but it's up to you. Okay, I will say on that one other point on this issue of the of the indispensable nature of the L. P. That is an indispensable party because under Rule 19 and should have been involved in this case should have allowed to be amended and brought in as a defendant in this case because relief cannot pull. Relief cannot be granted to be a Kelly under the facts of this case. Again, a E. O. Was originally brought into this case, uh, for in part of the J. W. Assumption claim. Mistakenly, it turned out later through later discovery. We learned that it was, in fact, the L. P. That would have had this liability. But that that claim that was pleaded in the original complaint was pleaded against the wrong party, and that incorrect party cannot cannot answer for that assumption claim because that party A. E. O. Did not assume that obligation from J. W. So complete relief cannot be granted in this matter, and we would argue that that a that the United A. E. That a fund United B. R. L. P. Is an additional defendant in this case, and the fact that it destroys diversity because they happen to have a California resident and B. A. Kelly happens to have a California resident is is is just the facts that we all agree on. But it's not. It's not anyone's fault. We did not form shop or seek to engage in any form of of involvement to try to defeat the court's jurisdiction. It just happened to be that way as a result of the unique situation of the of the owners of these two entities. And with that, I would reserve the balance of my time for rebuttal. Yes, you say time for rebuttal. Thank you, Mr. Paul and Mr. Combat. Good morning, Your Honors. May it please the court. John came back for Pele Athan Energy Operating LLC. This, of course, is an appeal from summary judgment. Review is de novo. I think it's important to start out with the point that an unleased owner in a unit well in Louisiana in a sense gets a free ride. I mean, they don't have to pay any of the cost of the well. Those costs are recouped out of any production by the operator if there is production. I think that bears on one of the questions is what are we looking at here in terms of dollars? And it is a very significant claim. They're seeking forfeiture on 16 wells, one Haynesville well and 15 Cotton Valley wells. Now, we know from the cases that the statute, the well cost reporting statute, involves a very serious financial penalty, the cases say, and therefore must be strictly construed. And an unleased owner that seeks to trigger a forfeiture under the statute has got to comply with the statute, the cases say, to the letter of the law. And that's what this case is about. Now, in Adams versus Chesapeake, which I think Judge Higginbotham was on that panel, and that was back in 2014, this court affirmed what we call the two demand rule. It's important to understand what that means. To get forfeiture, in order to trigger reporting under this statute, the unleased owner has to send that operator a letter that complies with section 103.1. But in order to get a forfeiture, they have to send a second letter that complies with the requirements of section 103.2. So, it's the two demand rules been approved and affirmed by this court. Now, in this case, B.A. Kelly made a series of strategic decisions. They, B.A. Kelly, decided to file suit against Athon in this court, and B.A. Kelly decided to seek an offensive motion for summary judgment in this court on the forfeiture issue. Now, we briefed that. They were given ample opportunity to adduce whatever evidence they needed to adduce, and his ruling is critical. It's not based on a single factor. What he said is that that December 2017 letter did not constitute a formal demand under section 103.1 based on a combination of factors, and it's this combination that's so critical. Number one, it didn't cite, the statute didn't cite section 103.1. It didn't ask for initial or quarterly reports like the statute says. Number three, it asked for, it didn't track the language of the statute, critical. Number four, it asked for information in a summary fashion, and it asked for information that went three years prior to Athon's period of operatorship. On the second letter, the court said, look, the statute says it's got to call attention to the operator's failure to comply with the provisions of RS 30 103.1, and the letter just didn't do that. Mr. Caldwell, can we assume that both sides here are sophisticated parties in terms of the oil field? In other words, my question sort of goes to what's the harm? Didn't everyone know what's going on here? Are they both sophisticated parties in this context? I believe that Athon is a sophisticated party. I think that it appears that B.A. Kelly was represented by counsel during this entire period. So yes, both parties are sophisticated parties. But what the B.A. Kelly is trying, their argument is, oh, we're relying on technicalities. Well, I think that proves our point exactly, Your Honor. We're entitled to rely on technicalities. They're seeking a significant financial penalty here. The courts say you've got to cross your T's and dot your I's, and that's not what they did. And B.A. Kelly- I have a question about the ownership issue. Ethion said that they were not the owner, but the true owner was an LLC or whatever. It's a confusing set of facts, Your Honor. When Athon took over, they sent out a letter, and they said, Athon operating is the new owner of your lease. You'll be getting royalty checks from us. Well, the fact was that a subsidiary, Athon United, was the assignee of those leases. But it's all irrelevant in this case. They represented that they were the owner. Well, Your Honor- Did they or not? Did the letter say they were the owner? Yes, sir. The letter was erroneous. But see, the other side knew that well, well in advance. I gave them a copy- That's what I'm trying to get at. That's a very basic set of facts. When was that discovered, and when was it known, and why was it- Well, I'd like to know when it was discovered. There's a whole series of points at which the other side knew the facts here. My responses to discovery are included in the record, and I include a copy of the very assignment. How would they be proceeding against someone who's not an owner if they knew about it? Well, really, Your Honor, it's kind of a moot point because under the statute, the only person you can sue is the operator. The operator is publicly known. I mean, you can go to the DNR and see who the operator is. They knew who the operator was. Why are they a necessary party if it's a moot point? I don't believe they are a necessary party, Your Honor. I think that's what the magistrate judge found. That's what I'm trying to get to. Okay. They're not a necessary party because you can't get a judgment against a non-operator under the low-cost reporting statute, number one. Number two, the magistrate judge says, look, they filed suit against Athon Operating, the operator seeking forfeiture, which is what they were supposed to do. They didn't adduce any evidence in connection with the Rule 15 motion that would substantiate the argument they were a necessary or even an indispensable party. They're the ones that filed suit against Athon Operating in this court. Then they filed suit against Athon United, the other party in state court, and we're fighting that. There's race judicata there, but that's beyond the scope of this record. I just don't think there's been a showing, and moreover, it's hard for me to articulate their position that Athon United is a necessary party. I've never understood the argument, frankly. I haven't either. It's very hard to ask me that question because I just simply don't understand it, Your Honor. We have asserted every objection in the book in state court, but again, that's beyond the scope of this record. Now, I don't know where the court wants to go here. I can discuss the jurisdiction issue. I can go deeper into what the case law says about what has to be in these letters because we have a good body of law on the Wilcox reporting statute, and the cases that cite the language of the letters— I would like for you to go into those letters. Yes, sir, Your Honor. I found no law that says what the district judge held had to be in the letters. Well, I don't think the judge held that any specific element had to be in the letter, and the district judge tells us in his December 4th ruling that it was a combination of factors that led the letters to be ambiguous. It wasn't just the failure to cite the statute itself. It was those other things I cited before. They didn't cite the statute. They didn't ask for this. They didn't do that. The court said, well, look, it was ambiguous. It has to be to the letter, and it wasn't to the letter. Now, I was about to refer the court to several cases. There's the Adams case that Judge Higginbotham was in, and in that case, the request, the first request, actually makes reference to the statute. The same in this Miller v. J.W. case that comes out of the Western District and the same in this M&M v. Exco case. The only case that we can find where the language of the letter is cited that doesn't refer to the statute itself is the 21 oil and gas case from the Louisiana Third Circuit Court of Appeal, but critically in that case, the unleased owner asked for initial and quarterly reports and then tracked the language in the statute, so there was not this ambiguity that Judge Dowdy was focusing on in the first letter. In the second letter, we did the same thing. We looked in the cases for quoted language from the which was in the Adams case, the M&M case and the Adams case. The second letter says exactly what the statute requires. Quote, call attention to the failure to comply with the provisions of RS 30 colon 102.1. Well, it doesn't really matter. If the first letter is not good enough, the substance of the second letter is really irrelevant, but I think that the district court looked at this in a holistic manner and said, look, it was ambiguous. It just was. It was borne out by Mr. Hickey's actions upon receipt for the second letter. Now, the district court didn't rely on that in its ruling, but the affidavit is in the record and Mr. Hickey called B.A. Kelly and said, look, Mr. Britton, what exactly are you asking for? Mr. Britton said, well, I would like a report kind and Mr. Kelly said, well, or Mr. Hickey said, oh, can you please send me a copy of the report so we can make you a report that looks just like that? Importantly, that never happened. Mr. Britton said he would and he never did. He misled Mr. Hickey. Listen, I think he entrapped Mr. Hickey, but that's my speculation. Back to the question. Mr. Hickey stated in his uncontradicted affidavit that had they simply done any of these things, cited the statute, said quarterly or initial reports, he would have known to send them what they now say they want. So here we are again. They want a extraordinary remedy from us and we're entitled to assert these alleged technicalities as a defense and that's exactly what we did. Now, the denial, I'd like to talk a little bit with my time about the denial after this adverse ruling came down and even though they had known about this other entity for many months, they thought they thought a rule 15 motion to join an additional party that was denied for the reasons we discussed. But that particular denial has not been certified. It's an interlocutory ruling, of course, and it's not been certified for appeal and they want it to come up on pen and appellate jurisdiction. Well, that's an interesting question legally. This court, and I'll talk to that in a minute, there's two kind of competing arguments there. But even if you review the denial, it's certainly not an abuse of discretion under the circumstances. And the magistrate judge does a good job of saying, look, they don't make a showing. I can't just speculate that it's an indispensable part of that. Make no showing. Secondly, the magistrate does appropriately applies to Hinskin's factors that we're familiar with. And they said, look, it's transparent that they were seeking to destroy the court's diversity jurisdiction to get to state court where they thought they might get a different result. And the court said they were dilatory. Look, they knew eight months prior that this other entity was out there and they knew for a fact that it was the least owning entity, even though I think it's irrelevant. And they even knew that it was that it was not diverse because I told them and those emails are in the record as well. And the court said, look, this was four or five months after the joinder of additional parties. It was two or three months after they filed motion for summary judgment. Of course, it was after the adverse ruling. So in the magistrate judge's opinion of the district court affirmed that was dilatory. And then the court went on and considered the other factors. You know, what is their prejudice to be a Kelly? Well, no, because they filed this suit against a thon united in state court. And then the magistrate judge looked at the equities, which is the fourth factor. And the court said, look, I just don't think you can play fast and loose with the jurisdiction of this court. Ask us to rule on your motion, get an adverse opinion and then try to get to to undo our jurisdiction. And the judge said that's unjust and improper. And I tend to agree with the magistrate. Now, turning to the pendant jurisdiction issue, and this is the real legal issue in the case, you might say, I mean, we have the sweat case in the Supreme Court in 1995. And then this court had Byron versus Landreth in 2009. And after those two cases, there's very few avenues available for pendant appellate jurisdiction. We know it's supposed to be reserved for rare and unique circumstances. And we cited all the cases we could find from this court. Most of them involve qualified immunity and despised emotions that relate to the qualified immunity where there's an overlap with the of the factual issues. The other and the key issue is whether the non appealable judgment is inextricably intertwined with the appealable judgment. And we cited Escobar versus Monty, which is the most recent opinion from this court. And that had both judges Higginbotham and Smith Smith in it. And in that court, you know, in that case, the court said, look, the fact, factual basis of the non appealable judgment is entirely different from the factual basis of appealable judgment. We just don't see that there's the two alleged claims are easily severable. Remember, in that case, there was the first bite and the second bite from the police dog. And and the court said, we're just not going to go back and look at that unappealable judgment because it's just as a prudential as a prudential matter, doesn't it make a lot of sense to resolve an issue now on a field that goes to the very heart of the district courts originally? Yes, sir. Your honor, that is exactly where I was going next. There's a there's a tension between the two cases, this precision builders case from this court. And that was that was a case you were in your honor in 2016. And then they cite the other side sites, the MasterCard case from the Second Circuit. That's the real, you know, interesting legal issue in the case that the case is at Council. Well, there's precision builders versus Olympic Group. That's Fifth Circuit 642 Fed Appendix 395. And the other side sites, the MasterCard versus Visa from the second U.S. Second Circuit, which is 471 Fed 3377. Now, the Fifth Circuit so far has said following Swinton's following Byram, we don't revisit rule 19 denials because they don't, as a principle matter, implicate the court subject matter jurisdiction. And they follow the Lincoln property case from the Supreme Court from 2005, which basically says that which is one one argument. The other argument is this this MasterCard case from the Second Circuit. In that case, the court said, well, because the 19, it really wasn't a 19 motion, but the court, it was very complicated factually, but the court construed a rule 19 motion and a rule 24 motion. They said, well, we're going to go ahead and consider it on appeal because we do think that whether this entity was an indispensable party could have a bearing on the court's jurisdiction because of the non-diversity problem. So those are the two cases in the tension point. It's a decision for this court, but again, I don't think it's particularly material in the outcome of this case, because even if you have review, it would be very difficult to find an abuse of discretion here. This is not a situation where they sought to join a non-diverse party prior to seeking a dispositive motion. Matter of fact, it's just the opposite. They sought the dispositive motion, then they decided to join the non-diverse party. So I think if the facts were the other way around, there would be a much stronger argument to follow MasterCard versus Visa. But I don't know the answer to that, Your Honor. It's maybe in the Supreme Court somewhere someday. Maybe this case, we'll see. But here, I think the court does have some discretion. Are we going to go revisit a case that, in my view, is quite transparent on its face in an effort to undo everything that had been done up to that point? I hope I've addressed the court's questions. I do want to reiterate that they chose to file their suit in this court. They had every opportunity to put forward a case. The summary judgment record is not particularly robust here. They had their chance to litigate this, and they seem to want to kind of undo the result. We don't think that's fair. We think what Judge Dowdy did is the correct result. When you're talking about forfeiture, whether it's in this case or any of these Hainesville wells that we're involved in, those numbers can quickly, quickly escalate to a lot of money. These operators, they're entitled to formal notice under Section 103.1 before they're placed in jeopardy of forfeiting what could be, in some cases, millions of dollars of well recoupment. Remember, the forfeiture is something of a windfall for these unleased owners. They never had to pay that money in the first place. They get a free ride. The equities here do, in my view, favor the operator. We need clear notice, and the courts have done a good job thus far of weighing the interest of the unleased owner against the operator. We would urge this court to affirm what's been done so far. We're going to have to fight. We are fighting this case in state court. I think it's inappropriate, but we think this court's ruling could have a bearing on race judicata in that action. Now, are there any other questions? I have 40 seconds, Your Honor. All right. Thank you, Mr. Cambach. Mr. Colgan, you've saved time for rebuttal. Thank you, Your Honor. I want to address first the issue or the question that Judge Higginbotham raised, and that is the sophisticated nature of the parties that are involved in this case. Mr. Cambach indicated that certainly Athon is a sophisticated oil field operator, and then indicated that B.A. Kelly was also sophisticated. That's actually not the case. B.A. Kelly is a real estate holding company. They do not drill wells. They do not routinely and regularly engage in the production of oil and gas, so they are not sophisticated in the ways of oil and gas. Now, they may be considered to be a sophisticated real estate holding company, but that's certainly far than what we're involved with in this case. Now, I want to go back also to the question of the necessity or necessary and indispensable nature of the LP, and let me make this. We originally pled, B.A. Kelly originally pled in the original complaint, not only that the sufficiency of the latter two demand letters sent to AEO, but we also pleaded that a November 2013 well-cost affidavit production revenue information should have been given to B.A. Kelly by then-operator J.W. In 2016, Athon United BR acquires the leasehold interests into those the two units in question by virtue of an assignment. In that assignment, the specific says that Athon United BR LP acquires and assumes all liabilities and obligations of J.W., the previous operator. We make that claim, however, and articulate that claim based upon a November 16, excuse me, a September 2016 letter that AEO sends out to all of the lease, the interest, mineral interest owners, including but not limited to B.A. Kelly that says AEO is the entity that acquired these leases, thus acquiring the liabilities and obligations of the previous operator, J.W. So had we known, and this notion that, well, they had the opportunity to file the suit and they chose that venue, they chose the Federal District Court for the Western District Louisiana. This is true. We chose it, but it was determined by the fact that AEO was diverse from B.A. Kelly Land Company, which no party in this case disputes. It was not late until much later that we determined and understood and became aware of the fact that it was, in fact, the limited partnership that actually owned these leases, and it was only So this notion that we chose the venue, no, we did choose the venue, but it was based upon the flawed assumption and the flawed information provided to B.A. Kelly by AEO. That's why that litigation was instituted in that setting. And I also want to point out to the court that when we filed our motion for summary judgment, it was a motion for partial summary judgment on only one because the court did not have the court had nothing before it regarding the J.W. Assumption claim, the revenue stream and the cost that that we were seeking in the accounting that we were seeking in connection with this case. And as a result, the court did not have sufficient evidence to look at and make a determination as to the efficacy of those claims. And therefore, we were not untimely in our filing of the amended pleading, seeking to add an additional party that was that was not diverse and therefore subject matter. Jurisdiction of the court was implicated again. This is not a situation where we chose to add this party simply to defeat the court's jurisdiction. We chose to add this party because we had no other viable alternative, given the district court's indication that it intended to dismiss the not just the forfeiture claim. And Mr. Countback makes that point in his statement to this court to his argument to this court, where he indicates plainly that this court is going to have res judicata. This judgment could potentially have res judicata effects as to those other claims, which clearly that is not the case, given given the set of circumstances and given the fact that the United that the LP was not, in fact, a party to this to this district court case. And so we think there is indispensable nature. And I will point out to that the way this assignment flowed from one from J. W. To the LP and then LP utilizing a E O as the operator slash LP is the principle in this setting. Your agent is a time has expired. Thank you, Your Honor, for your consideration. The case is under submission.